Motion To Address
THE Honorable Court

United States District Court
District of Connecticut
FILED AT HARTFORD
6/9/06
Kevin F. Rowe, Clerk
By A. Mntz
Deputy Clerk

re: Docket # 3:01-CV-00903-DJS

name: GOLCHIN VS. DEPARTMENT OF CORRECTIONS
UNIVERSITY OF CONNECTICUT
+
Comission on HUMAN RIGHTS &
opportunites

motion: Filed in Hartford, CT.

was assigned: Honorable Judge Dominik Squarito

U.S. DISTRICT JUDGE

2006 JUN -7 A 10:21

RECEIVED

*Sheida Cobra Golchin*

To Attention of Members of
The Federal District Court, Hartford, CT
and The Honorable Judge Dominik Squatrito

re: Docket 3:01-CV-00903-DJS
GOLCHIN VS. DEPARTMENT OF CORRECTIONS
         &
UNIVERSITY OF CONNECTICUT & (CHRO)
         &
COMISSION ON HUMAN RIGHTS & Opportunties

June of 2006 update on outcome of case.

— Loss of 2 pensions total of 3 jobs due to fraud.

Greetings, per my discussion with the clerk's office sometime in May of 2006, I would like to inform the Court on the outcome of Docket 3:01-CV-00903-DJS.

Undisputed FACTS OF THIS CASE:

1) IN 1997, I was employed by The Department of Corrections in The Medical Department at the 1106 North Ave Bridgeport, CT. Location. Date of hire was 2/16/97.

2) I was asked to give up my career in the Connecticut Army National Guard, as a Medical Records Specialist, who had just been promoted to S-3 operations Division Battalion level for The 118th Medical Battalion located in New Haven, CT. This job held a 20 year pension, 6 years which I had already successfully completed by 1997.

3) Aside from being hired below my grade, pay and shift, I began my 6 month probationary period with this employer.

4) Between March of 1997 - August 1997, I was sexually harrassed and exposed to very hostile and unsafe working conditions.

*Sheida Cobra Golchin*

These Conditions were as follows:

a. Harrassment by a supervisory person in my Department of a sexual nature.

b. OSHA exposure to blood and body fluids, because the lab tubes were not in proper casing.

c. Threatening, witness to acts of retaliation against other staff in the Medical Unit, who reported illegal and unsafe conditions as well as myself included, which involved Blacklisting.

D. Witnessing fradulent arrests on State property as well as at the staff members residence, and at her other jobs as a direct result of reporting acts of illegal and hostile acts on State property by my employers to the CHRO & EEOC.

E. Witness to solicitation of embezzlement, which was disclosed to me by a fellow administrator, in my department by the Regional Administrator of Bridgeport and New Haven CC and the Staff appointed by The Rowland, Rell administrations.

F. Retaliation in preventing my case with the employers to go forward by employer, after finding out that I had been given the right to sue by the federal Government by lying on a Meediation Contract dated and signed in June of 1998, (June 20th, 1998) which the Rowland Administration conducted to prevent the Court's knowledge of the illegal and unlawful conduct which was being knowingly committed by his administration.

G. Incrimination by method of retaliating to prevent credibility of victim's case n claim by having me arrested on 3 consecutive occasions, upon knowledge, that the fraud to have case dismissed to prevent exposure n the Court's involvement in the overall corruption which began in 1995-1996 and proceeded until 2002 according to the 674 other complaints filed by my co-workers as well by this particular employer: The Department of Corrections, University of Connecticut Correctional managed care, And The CHRO. (Based on 2003 CHRO Report regarding Department of Corr / UConn Corr managed health)

*Sheida Cobra Golchin*

H- lying to the Law in Connecticut, including the Assistant Attorney General's office, The Attorney General's office, The State of Connecticut police and the local police departments in my case Bridgeport, and Norwalk police Departments as well as the State judges in an attempt to incriminate me in order to discredit me, my case and my testimony to prevent the corruption from being exposed.

Causing the horrific damage not only to my personal, professional and educational life, but also displacing hundreds of innocent people including myself by fraud, corruption, and unlawful acts knowingly, your honor and Members of the Court to profit financially and personally from the pain suffering and abuse of so Many.

Therefore, I respectfully request the Court to accept my report to the Court as evidence of Corruption, fraud, and Unlawful acts knowingly Committed against Docket No. 3:01-CV-00903-DJS and have asked the Attorney General of Connecticut to investigate the circumstances of the 2003 CHRO report which I have enclosed for the Courts review in support of my and my fellow former State employees intentional abuse by the Rudolf/Rell administration. I do this for the benefit of my State and for the benefit of justice. I did not disclose this information for political or personal motives, but rather because it is the Undisputed facts.

Furthermore, I expect only the best for my State and now believe that the corruption committed is in contradiction to every law, ethical and moral standard established by the Great State of Connecticut and The Honorable Federal District Court of the United States, Hartford, CT.

*Sheida Cobra Golchin*

As a child, I was always taught to tell the truth and that it is then, that the truth will set you free. I have told the truth and now it is time for the truth to set me, my fellow innocent co-workers and this great State free from the Corruption, Fraud, Abuse, and Unlawful and Unethical acts of this Civil administration. I have requested for a Hearing in reference to this case with the State Senate.

To this day I have not received any form of remedy, or resolve to this situation, it is the federal government which takes care of me. I want much better for my State, for myself, for our people. Connecticut deserves much better. Thank you for taking the time to read my letter.

Respectfully,
Miss Sheida Golchin
- Honorable Discharged Veteran
  CT Army National Guard
  12/1994           (6 yrs.)

- Former Department of Corrections
  Employee
  1/00 (fired)     (2½ yrs.)

- Victim of Fraud and retaliation

**Location:**
CORRECTIONS, CT DEPT OF;



February 26, 2003                                                              2003-R-0201

## COMPLAINTS FILED WITH COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES AGAINST DEPARTMENT OF CORRECTION

By: Christopher Reinhart, Associate Attorney

You asked about complaints filed with the Commission on Human Rights and Opportunities (CHRO) against the Department of Correction (DOC).

From FY 1995/1996 through FY 2001/2002, there were 675 complaints filed with CHRO against DOC. 101 complaints were based on sex and 87 of these were employment complaints. Table 1 shows, for each of these fiscal years, the total number of complaints filed, the number of complaints filed in the three most frequent categories, and the number of total complaints and number of complaints in each category based on employment.

| Complaints Filed With CHRO Against DOC (Total Complaints and Three Most Frequent Categories*) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | All Complaints | | Race | | Color | | Sex | |
| FY | Total | Employment | Total | Employment | Total | Employment | Total | Employment |
| 95/96 | 92 | 89 | 24 | 24 | 16 | 16 | 22 | 21 |
| 96/97 | 106 | 85 | 31 | 26 | 27 | 21 | 13 | 12 |
| 97/98 | 87 | 75 | 22 | 18 | 11 | 8 | 19 | 19 |
| 98/99 | 101 | 41 | 25 | 9 | 21 | 7 | 8 | 5 |
| 99/00 | 118 | 72 | 29 | 20 | 26 | 15 | 13 | 11 |
| 00/01 | 68 | 43 | 17 | 11 | 11 | 7 | 11 | 8 |
| 01/02 | 103 | 63 | 22 | 12 | 19 | 10 | 15 | 11 |

*Besides race, color, and sex, complaints are put in the following categories: age, ancestry, mental retardation, national origin, other, physical disability, prior conviction of a crime, religious creed, sexual orientation, and source of income. Complaints that were not employment claims were classified as public accommodation or other. The attachments include complete data on all of these complaints.

CHRO closed 669 complaints during this same period. 490 were dismissed at various stages or withdrawn, 87 were resolved by the parties at various stages, 27 received public hearings, and 65 were given a release to sue. Table 2 shows the total complaints against DOC that were closed by CHRO in each fiscal year and groups them into the categories described above. The attachments include more

detailed information on the stages in the CHRO process where the complaints were closed.

| Complaints Against DOC Closed During Each Year | | | | | |
|---|---|---|---|---|---|
| FY | Total | Dismissed at Various Stages or Withdrawn | Resolved by Parties at Various Stages | Public Hearing | Release to Sue |
| 95/96 | 98 | 83 | 7 | 2 | 6 |
| 96/97 | 95 | 69 | 20 | 0 | 6 |
| 97/98 | 88 | 73 | 9 | 0 | 6 |
| 98/99 | 107 | 70 | 8 | 10 | 19 |
| 99/00 | 120 | 78 | 21 | 12 | 9 |
| 00/01 | 60 | 46 | 8 | 3 | 3 |
| 01/02 | 101 | 71 | 14 | 0 | 16 |

CHRO closed 103 complaints against DOC based on sex during this period. 70 were dismissed at various stages or withdrawn, 12 were resolved by the parties at various stages, 7 received public hearings, and 14 were given a release to sue. Table 3 shows the total complaints against DOC based on sex that were closed by CHRO in each fiscal year and groups them into the categories described above. The attachments include more detailed information on the stages in the CHRO process where the complaints were closed.

| Complaints Against DOC Based on Sex That Were Closed During Each Year | | | | | |
|---|---|---|---|---|---|
| FY | Total | Dismissed at Various Stages or Withdrawn | Resolved by Parties at Various Stages | Public Hearing | Release to Sue |
| 95/96 | 21 | 16 | 1 | 1 | 3 |
| 96/97 | 16 | 10 | 3 | 0 | 3 |
| 97/98 | 13 | 13 | 0 | 0 | 0 |
| 98/99 | 16 | 10 | 2 | 2 | 2 |
| 99/00 | 13 | 6 | 3 | 3 | 1 |
| 00/01 | 9 | 6 | 1 | 1 | 1 |
| 01/02 | 15 | 9 | 2 | 0 | 4 |

The category of complaints dismissed or withdrawn includes those that were (1) administratively dismissed, (2) dismissed at merit assessment review for no possibility of finding reasonable cause on investigation, (3) dismissed as frivolous at merit assessment review, (4) dismissed at merit assessment review as no claim for relief, (5) found to lack reasonable cause after a full examination, (6) found to not be within CHRO's jurisdiction, and (7) withdrawn.

Complaints that were resolved include those that resulted in a (1) no fault agreement, (2) predetermination conciliation, (3) satisfactory adjustment, or (4) withdrawal with settlement.

CR: ro